STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

JOSEPH TARTAKOVSKY (CABN 282223)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7320
    FAX: (415) 436-7234
    joseph.tartakovsky@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 5:21-CR-00439-BLF |
| Plaintiff, | GOVERNMENT'S SENTENCING MEMORANDUM |
| v. | Sentencing: January 31, 2023 at 9 a.m. |
| RAUL JIMENEZ-VERDUZCO, | |
| Defendant. | |

    Defendant Raul Jimenez-Verduzco pleaded guilty on November 1, 2022 to Count One of a multi-count Indictment charging him with Conspiracy to Distribute and Possess with Intent to Distribute 500 Grams and More of a Mixture and Substance Containing Methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(l) and (b)(l)(A).

### I.    OFFENSE CONDUCT

    Mr. Jimenez-Verduzco admitted that for a year between October 2020 and October 2021 he worked as a salaried, on-the-ground operator for a highly successful San Jose drug-trafficking organization. Presentence Report ¶ 9. He was recorded on hundreds of wiretapped calls taking orders

from customers, and dispatching couriers—the transactions principally involving methamphetamine. *Id.* At other times, he would receive caches of drugs and store them in his apartment, or take payment from customers and hand off the cash to other members of his organization. *Id.* at ¶ 10.

His responsibilities, in particular, included managing customer relations with buyers—which, given the massive drug quantities, consisted mainly of other wholesale traffickers. For example, in phone calls from the week before he was arrested—a typical week—he pledged to make up shortchanged drug quantities (8/12/2021), fielded complaints about the crumbly quality of his meth (8/14/2021), rejected meth offered by other suppliers because it had a bad odor (8/16/2021), and handed out samples to entice potential buyers (8/17/2021, 8/18/2021). These calls represent just a few of the 75 or so calls and texts made by Mr. Jimenez-Verduzco during that seven-day period.

He also transported methamphetamine and heroin to customers himself. *Id.* at ¶ 11-12. In his plea agreement he admitted to a handful of deliveries (or attempted deliveries) that law enforcement happened to observe. Specifically, on October 20, 2020, he was captured on video selling three ounces of pure methamphetamine and one ounce of heroin to an undercover agent. On August 18, 2021, he handed a large trash bag containing 20 kilograms of pure methamphetamine to a buyer. And on October 21, 2021, he was stopped in a white BMW with a backpack containing a pound of meth—with another 19 pounds of meth, a few pounds of heroin, and about $4,000 in cash also in the car. *Id.* at ¶ 11-13.

In total, he admitted to personal responsibility, as a conspirator, for trafficking 198 pounds of methamphetamine, 10 pounds of heroin, and 40 pounds of cocaine. According to average drug prices in 2021, as determined by Northern California High Intensity Drug Trafficking Area analysts, these quantities translate to something like $495,000 in meth, $63,000 in heroin, and $540,000 in cocaine.

## II.   SENTENCING GUIDELINES CALCULATION

The government, defense, and Probation all calculate the Guidelines as follows:

a.   Base Offense Level, U.S.S.G. §2D1.1(a)(5) & (c)(1):                                        38

Converted Drug Weight:

Oct. 20, 2020-Oct. 20, 2021:  134 pounds of methamphetamine
                              10 pounds of heroin
                              40 pounds of cocaine
                                              = 1,223,812.80 kg CDW

|   |   |   |
|---|---|---|
| October 20, 2020: | 85 grams methamphetamine | = 1,700 kg CDW |
|   | 15.3 grams heroin | = 15.3 kg CDW |
| August 18, 2021: | 19,945 grams methamphetamine | = 398,900 kg CDW |
| October 21, 2021: | 9071.85 grams methamphetamine | = 181,437 kg CDW |

TOTAL = 1,805,865.1 CDW [90,000 kg or more of CDW]

    b.    Acceptance of Responsibility:    - 3

    c.    Adjusted Offense Level:    35

The government concurs with Probation's Criminal History Category calculation (i.e., I), and its recommendations as to a fine, restitution, and special assessment. Mr. Jimenez-Verduzco truthfully completed the safety-valve debrief, post-plea, so he should receive a two-level decrease. *See* PSR ¶ 20.

As a result, Mr. Jimenez-Verduzco's Total Adjusted Offense Level is 33. His Guidelines Range is 135-168 months.

### III.    GOVERNMENT'S SENTENCING RECOMMENDATION

The government respectfully requests a sentence of 115 months. This is a 20-month downward variance from the low end of the Guidelines. The government believes that this variance is justified by Mr. Jimenez-Verduzco's relatively young age (24 years); the fact that his conduct was non-violent; and the recognition that, although his role was extensive, he did not lead the trafficking operation.

That said, Mr. Jimenez-Verduzco's role as a "dispatcher"—his preferred label for his position—should not be allowed to understate his conduct. In the world of drug trafficking, taking orders and ensuring deliveries is the very heart of the day-to-day work. It is true that decisions as to pricing were made by a person that he reported to, and that he received a salary instead of a percentage of profit. But the defendant performed every other critical aspect of the organization's work. He was no mere errand-boy. The government believes that he was brought in as a trusted member of kinship group. And to be sure, he worked full-time, loyally and industriously. He was indispensable on an operational level.

And Mr. Jimenez-Verduzco did this destructive work for a year—even though he had other ways to make a living—including through jobs that, according to the defendant himself, brought him some $54,000/year (cook/caterer) or $36,720/year (harvester). PSR ¶ 50. His conduct arose not from a few bad choices, but a year of bad choices. His labors facilitated the distribution of at least a million dollars

of controlled substances. And in the end his work helped to ensure that his trafficking group remained one of the South Bay's largest trafficking operations—and that drugs, especially neurotoxic meth,[1] remained cheap and plentiful on San Jose's streets.

### IV. CONCLUSION

For these reasons, the government respectfully requests a sentence of 115 months.

DATED: January 24, 2023

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

___/s/_____
JOSEPH TARTAKOVSKY
Assistant United States Attorney

---

[1] *See, e.g.,* Ruth Salo, Keith Flower, Anousheh Kielstein, Martin H. Leamon, Thomas E. Nordahl, Gantt P. Galloway, "Psychiatric comorbidity in methamphetamine dependence," *Psychiatry Research*, Vol. 186, Issues 2–3, 2011, at 356-361, https://doi.org/10.1016/j.psychres.2010.09.014; Daniel E. Rusyniak, "Neurologic Manifestations of Chronic Methamphetamine Abuse," *Psychiatric Clinics of North America*, Vol. 36, Issue 2, 2013, at 261-275, https://doi.org/10.1016/j.psc.2013.02.005.